## In re McKENNA.
### No. 14293.

District Court, D. Connecticut.
April 9, 1935.

Robin & Robin, of Waterbury, Conn., for bankrupt.

Alfred L. Finkelstein, of Waterbury, Conn., for objecting creditor.

HINCKS, District Judge.

In this matter it appears that on April 6, 1933, the bankrupt, when insolvent, made an assignment of future wages in the amount of $1,220 to the National Adjustment Agency under an unrecorded agreement whereby the Adjustment Company was to pay part of the wages thus assigned to certain creditors of the bankrupt and the balance to the bankrupt himself. At the time of this assignment, there was pending against the bankrupt an action brought in a state court, claiming $1,200 damages, by one who is the objecting creditor in these proceedings. This creditor was not a party to the secret agreement between the bankrupt and the Adjustment Company, nor did he ever benefit from that agreement. Exclusive of the claim of the objecting creditor, then in litigation as we have seen, the claims of other creditors at that time did not aggregate over $800.

From these facts alone it is apparent that the assignment of future wages operated as a preference. But a preference is not a ground for the denial of a discharge. In re Richter (C.C.A.) 57 F.(2d) 159.

But how about the fact that the assignment of future wages was made under an arrangement whereby the assignee, each week after collecting the bankrupt's wages, was to pay a part thereof to the bankrupt? Does this feature of the case make the assignment a fraudulent transfer or concealment within the meaning of section 14b (4) of the act, as amended by Act May 27, 1926, 11 U.S.C.A. § 32 (b) (4)?

As to this, the master's finding shows that between the date of the assignment (April 6) and the date of filing the voluntary petition in bankruptcy (June 23) the bankrupt received from his assignee amounts varying between $13 and $16 per week, and only the balance amounting to $11 weekly was applied by assignee on certain of the bankrupt's debts.

But, under the law of the state, $15 of the bankrupt's wages was exempt from attachment and thus beyond the reach of his creditors. General Statutes Conn. 1930, § 5793. It follows, therefore, that, under the arrangement attending the assignment, the bankrupt derived no substantial benefit therefrom in excess of his statutory exemption. This fact completely negatives the inference that the assignment was a fraudulent transfer within the meaning of section 14b (4), as amended in 1926, 11 U.S.C.A. § 32 (b) (4). Creditors could not be defrauded by the loss of what was otherwise beyond their reach, nor can a fraudulent intent be im-

puted to the bankrupt from an arrangement which brought him payments not substantially greater than those assured to him under the exemption statute. In re Groth (C.C.A.) 36 F.(2d) 41.

To be sure, the bankrupt admitted that the assignment was made to prevent creditors from attaching his wages. But the admission must in fairness be read in the light of the surrounding circumstances. As we have already seen, the arrangement was not one that diverted to the bankrupt moneys that otherwise would have been within the reach of creditors. On the contrary, the record shows a situation in which attachments so numerous were threatened that the costs of litigation were in danger of consuming the bankrupt's meager substance to the exclusion of all creditors. An assignment to correct such a result, though literally, perhaps, one intended to hinder or delay creditors, certainly is not within the ban of the act, if unaccompanied by gain to the bankrupt at the expense of creditors. And if, by deliberate intent or otherwise, its only operation was to favor certain creditors whose claims the bankrupt admitted, to the exclusion of the objecting creditor whose claim the bankrupt disputed, it was at most a voidable preference.

The application for a discharge is granted, and the bankrupt may submit an order to that effect.